Good morning, Your Honors. My name is Tim Casey. Along with James Williams of my law firm, sitting at the end of the table, and Tom Liddy of the Maricopa County Attorney's Office, we represent the defendant appellants in this case, Maricopa County Arizona Sheriff Joseph M. Arpaio and the Maricopa County Sheriff's Office, if I say every now and then, MCSO. That's the acronym for the Maricopa County Sheriff's Office. I'd like to reserve five minutes of my time for rebuttal. Your Honors, this is a racial profiling lawsuit. I want to make sure it's clear for the court two things. This is an interlocutory appeal, as the court is aware, that we took based on a December 23, 2011, granting of a partial summary judgment on a narrow Fourth Amendment issue granted in favor of my very capable opponents and their clients. Since that time, we completed our trial. It was a bench trial because only declaratory and injunctive relief was sought. It was completed on August 2nd. It is pending before the Honorable Murray Snow in Phoenix. We can expect at any time a findings of fact and a conclusion verdict. Now, that deals with, does it deal with the Fourth Amendment issues as well as the equal protection issues? It does. It deals with both Fourth Amendment and Fourteenth Amendment, although I'm sure plaintiffs' appellees can tell you their position, but the gravamen of the lawsuit was a Fourteenth Amendment racial profiling lawsuit arising out of traffic stops occurring by the MCSO deputies during something called crime suppression operations. So what is your suggestion as to what difference that makes to us? What, in your view, should we do about the fact that it's taken the interlocutory appeal long enough that you've now completed the trial? Your Honor, two things. The short answer is I believe the court needs to proceed because we have, what we respectfully submit is an application of Fourth Amendment terry stop analysis in the context of the Arizona human smuggling statute, which we may be one of two or three states among the 50 that have that type of law. And you're relying only on the human smuggling and not on the transportation statute? Yes. And the other thing I wanted to alert... The transportation statute's been joined. Yes. And what I wanted to alert the other court to, and, Your Honor, you mentioned that, is the statute 13-2929, the transportation of illegal aliens. I just found out yesterday, because I'm not counsel in it, neither is my client in the case, I understand, but we just learned yesterday that the Honorable Susan Bolton, district court judge in Phoenix, on a case called, I think the name of the plaintiff has changed, but it used to be the Friendly House v. Whiting matter, CV10-01061-SRB. She just enjoined the application of 13-2929. But you're not relying on that, so... I am not. That's interesting as kind of background, but that doesn't have a direct effect as far as your argument is concerned. It doesn't, other than Judge Murray Snow addressed how his ruling might affect that. We addressed it. The central issue... You were somewhat relying on it, but you're not now. I am not, and I am telling the court that I am not relying on that now. My clients will honor that injunction because it was issued in another case. Yes, Your Honor. Let me see if I understand. There was some doubt in my mind reading the record whether or not you were considering this interlocutory appeal. I think you're right. It clearly is. It has all the looks of it. Yes, sir. But with the papers that were filed by your client, there seemed to be some effort to make it look like a permanent injunction. Now, you followed what we've asked you to do before in our cases. Yes, sir. This going ahead with the trial and not waiting for us to do the preliminary injunction because after the trial, there's going to be something that's very permanent, and there'll be a factual record, and then we can look at the issue in a different light. Considering Judge Snow has now heard the evidence, he's ready, what benefit do we have of going ahead with this proceeding as distinguished from waiting for Judge Snow to complete? The injunction is still in place. The plaintiffs are not being damaged. There isn't anything occurring. Why should we get further into this case and not wait for Judge Snow's opinion and then bring that up? The court raises the question of judicial economy, and it's obviously a sound one. Here's why I believe the three of you ought to take this issue. The central issue in this case is about whether or not it is appropriate to apply the totality of the circumstances analysis, that standard, to determine whether or not an officer has reasonable suspicion to make a Terry stop under Terry v. Ohio, a brief investigatory stop to determine whether criminal activity is employed. But Judge Snow, the injunction is very narrow, and it doesn't appear. It doesn't say that. It is very narrow. But here is the problem with it. We read it and we cite it, and I understand that even counsel and I have different agreement about what it says. It adopts, we respectfully submit to you, although it uses some language that I can see can be interpreted otherwise, it adopts a standard that says these deputies to enforce, do a Terry stop to determine whether or not the human smuggling statute is being violated, must satisfy, have reasonable suspicion on all the elements of the human smuggling statute. Well, first of all, it doesn't say that. But even if it did, I don't understand why that would be wrong. I mean, what you're, what he's enjoined to me seems the functional equivalent of saying to you, I just saw you leave First Interstate Bank with $100, and I have, I absolutely know that it's a federally insured bank, so I'm going to arrest you for bank robbery, because you have money and you came out of a federal bank. But you don't have anything to tie that to whether you got it lawfully or you didn't. And all he's enjoined is stopping someone for human trafficking on the sole ground that the person themselves, that people themselves are here unlawfully. So I don't understand what's wrong with that. What I'm suggesting to you is the analysis that is in an opinion now, and that the court is still theoretically, I assume, may use in determining. All the more reason not to, I mean, that's a very good reason not to decide anything now, because if your whole argument turns on the way he wrote his opinion, as opposed to the content of the injunction, then it seems to me we ought to let him explain himself when he writes another opinion. The only thing we really have before us is an order. Yes. We don't have an opinion, we have an order. Yes, sir. And the order says that the sheriff cannot enforce civil, federal civil cases. That's all it says. And it says the officers are hereby enjoined from detaining any person based upon knowledge or reasonable belief without more, he's put the without more in, that the person is unlawfully present within the United States. And he explains that's a civil, not a criminal case, so you can't stop them. And he says specifically in here he's not enjoining the police officers from going ahead and processing their own cases, their own crimes. You're only stopped for one process. Now, assuming that that's right, that there's enough in here that he can enforce this temporary injunction, in two weeks or three weeks we're going to find out what he really means. I have some difficulty with us going back to his opinion he wrote before and say we're going to reverse the preliminary injunction based upon the wording because we don't want you to use it in your permanent injunction, whatever that is. Your Honor, I understand that, and perhaps there will be changes. You know, there have been no allegations or accusation that my clients have violated in any way that preliminary injunction. The problem is to get to that preliminary injunction, you have to have a finding of a Fourth Amendment violation. That's what he ruled as to one of the deputies, Luis DiPietro, as to one of the plaintiffs, a Mexican national who was pulled over and who the testimony was and the evidence and the record was, was lawfully in the country but was out of status. Now, there is a legal dispute on that. How he got to the ---- people saying that he wasn't and they let him go. So he was detained for six or seven hours and the people who actually know anything about this said that it wasn't a problem. The actual evidence shows that they made a determination that they could not prove that he was working because he was detained for having not an I-94 on him, allowing him to be more than 25 miles north of the border, and that he admitted to a 287G officer, in our case, Carlos Rangel of the MCSO, that he was actually, while on a tourist visa, working, which takes him out of status. The ---- I don't think we can draw a conclusion whether the merits of the stop by the MCSO or the detention was valid because there was a policy decision made of what to do with Mr. Melendez. Kagan. You don't have any 287G authority anymore. Not since October 16th of 2009. At this time involving Mr. Melendez, the court made a determination that we needed to find, and I respectfully, I hear what I heard at least two of the justices say. Just judges. Judges, excuse me. No justice in this court. Just judge. I apologize. It's all right. We're sorry too. Let me share with you why I disagree with the court. And you all have been doing this obviously longer than I have been practicing, but if you look at the order, excerpt of record at page 11. It's the order, page 11, lines 2 through 7. Then you also look at excerpt of record 14. That's page 14 of his order, lines 2 through 8. What he does is he marks through the three elements of the human smuggling statute and says that in order to have a Terry stop, our officers, our deputies, have to have reasonable suspicion, all those three elements. Why isn't that perfectly reasonable? Because it's never been the law of this circuit or of the United States Supreme Court that in order to have a Terry stop, you have to have reasonable suspicion on every single element. In one situation, for example, if you need to have intent as an element of the crime, you definitely have to have it. See, state of mind seems different to me because let's go back to my bank robbery example. If all I know is that this is a federally insured bank and that you've walked out with $100, I hope you'll agree that I don't have reasonable suspicion to stop you. That's right. But because I don't have reasonable suspicion about the crucial element, which is how you obtained that money, but if I also have reasonable suspicion that you got it by pointing a gun at the teller, then I would have reasonable suspicion even though I don't know for sure what your state of mind is. So isn't state of mind kind of the only exception that you actually have to walk through? No. You have to know if you're going to make a probable cause arrest, you've got to have, actually, you've got to have probable cause for that intent. But on reasonable suspicion, you don't need to have it. In fact, the case that we cited to you, the Freedom Riders, the helmet case? But intent is the only thing that you would be able to infer. You have to have some reason to think that a person has done all the other things about a crime, and we assume that people act voluntarily. I mean, maybe you were drugged and forced to rob the bank, and so we'd have no way to know that. But when you're dealing with the actual other facts of the crime, for example, on human smuggling, that somebody's being smuggled would seem to be relevant. Absolutely. And that's one of the things that is the problem, I respectfully submit to you, is because it's the old forest and the trees where you can't recognize the trees anymore because of the forest because everyone has focused so much on the issue of whether or not a person is unlawfully present in the United States. That is only one component of one element of the human smuggling statute. And that's the only one he's adjoined. In other words, I guess my question is, is it the policy of the MCSO to do something that would violate this injunction? That would have to be either that you are detaining people based only on reasonable knowledge or belief that the person is unlawfully present within the United States. Are you saying that you want to be able to do that? Absolutely not. What I'm saying is— Well, then you can't violate the injunction. Exactly. But the whole thing is we're here because to get the injunction, there has to be a Fourth Amendment violation, and that Fourth Amendment violation was determined on the wrong standard. But you have no problem with the injunction. I don't like the injunction because I think it was founded, instead of using the totality of the circumstances, my clients now have to meet every single element. It is the only law in America— No, all they have to do is not violate the injunction, and you said there is no problem with the injunction. Well, I always have to be careful what I say, Your Honor. We honor the injunction. Or do you want to be able to stop people from detaining people based on actual knowledge without more that the person is not a legal resident in the United States? Is that what you want to do? No. Then what's the point? What I want to be able to do is under the totality of the circumstances, like we have here, enforce the human smuggling statute, because unless you apply the totality of the circumstances, it is impossible to be able to have— The injunction doesn't tell you that a court won't do that in an individual case in the future. The injunction apparently asks you not to do something you don't want to do anyway. And I understand that. But here's the thing. Let me back up for a minute, and I'm going to conclude, if that's okay with you, on this. This is a Section 1983 case in which a prevailing party gets in whole or in part, as you know, an award of attorney's fees. So there is a monetary issue here, although there's no money damage assigned. In order to get injunction of relief, there has to be a constitutional violation. The injunction is the product of an improper legal analysis where this Court's longstanding totality of the evidence standard has not been applied. That's what we're asking you to do, is look at that and direct this Court, remand and direct this Court to apply the totality of the circumstances. Because if you look at the second element of the human smuggling statute, that second element deals with the transportation and harboring by a person who knows or should know another person is in the country or in Arizona unlawfully. There's two components of that, and everyone is focusing on the unlawful presence. I think we understand your position. Thank you. If you want to reserve time, this would be a good time to do it. Thank you, Your Honor. Ms. Lai? Thank you, Your Honors. May it please the Court, my name is Annie Lai. I represent the Plaintiff Appellees in this case. The question before the Court is straightforward. Did the district court abuse its discretion in enjoining the MCSO's practice, admitted practice, of initiating investigatory detentions where the totality of relevant facts that an officer has amounts to no more than reasonable suspicion or knowledge that the person has remained in the country unlawfully? The appellants do not dispute that mere unlawful presence is not a crime. That has been the law of this circuit since 1983 in Gonzales, affirmed by Martinez-Medina, and most recently affirmed by the Supreme Court in the Arizona decision. It is equally clear that Fourth Amendment prohibits local law enforcement officers from restraining the liberty of any individual without at least reasonable suspicion of a crime. What is your response to our question or questions about the appropriateness of deciding this case now when we're about to receive the final answer after a trial? Thank you. I just want to make a couple of one clarification and a note. The clarification is that Mr. Ortega Melendrez's Fourth Amendment claim was not entirely resolved on summary judgment. In fact, the district court entered summary judgment on the issue of detention based merely, well, Mr. Ortega Melendrez's chances of being harmed in the future by the particular practice at issue today, but reserved because there were disputes of fact for trial, the underlying Fourth Amendment claim that Mr. Ortega Melendrez had. The district court issued this injunction after a grant of summary judgment. This issue did come up at trial, and the district court may rule again or enjoin again or affirm its prior injunction. It may not ---- But this is officially a preliminary injunction, nonetheless, isn't it? Or was this a ---- What is the basis for the appeal? It's the injunction which is preliminary in the sense at least that the whole case wasn't resolved. It is preliminary in the sense that the whole case was resolved. In a sense, it's permanent because it was issued after a grant of summary judgment. The district court may revisit this issue after trial on a full trial record. In any event, the standard for appellate review were this panel to reach the issue of a preliminary versus a permanent injunction is basically the same. The only difference is that on a preliminary injunction, you have to ---- the plaintiff has to show a likelihood of success, whereas on a permanent injunction, the plaintiff must show that he has succeeded. Well, that's important. I'm sorry. Go ahead. We've made it clear in our cases that there's more to it than that. We're going to have a full record, and that's what we've said before and before in our court. Go ahead and try the case. Preliminary injunction is just King's X. And get a full record where we'll make the full determination. We've always tried to make the preliminary injunction a preliminary event. So all we have before us really is whether or not there was an abuse of discretion by this injunction. Our test, when it comes back up with the final determination, will not be abuse. And so what we try to do is do what's necessary to keep the facts from going awry until we get the full case. Why then doesn't it make sense, considering it's very close and we would not, if we just kept the injunction in force until the case is completed, and we have a full record upon which we can make a determination? Your Honor, we would not oppose the panel holding this case until you have a full trial record, even if there's an injunction issued in that case. I believe the standard is still abuse of discretion. However, plaintiffs note that the only record you really need to affirm the initiating these detentions. I wonder, I mean, there is a standing issue embedded here, and I assume that's going to be finally resolved in the, as to the final injunction. And I assume that there's a lot more evidence than there is now of various people's experiences under this policy. There was evidence presented at trial as to the individuals who experienced this policy and the policy of racial profiling. As we explained in our briefs, all that is needed to affirm standing, the finding of standing as to this Fourth Amendment injunction, is that the MCSO has a policy pattern and practice of initiating detentions based on mere lawful presence. But there has to be a plaintiff who can argue about that. I couldn't go in and argue that someone else has been stopped, for example. That is correct, Your Honor. So there has to be at least one plaintiff who has experienced the policy and practice. Or an organization with a member who has. The Ninth Circuit law states that there needs to be a plaintiff who has a claim to the policy. So, Your Honor, it's correct that you yourself could not bring that claim. Right, because one cannot bring a claim on behalf of a third party unless there's some special relationship like the guardian of someone. I can't just go around trying to enforce everybody's rights because I'm interested in it. Of course. So in that sense, I think the appellants are perhaps saying, well maybe . . . they're not asking us to wait either, but it would seem to me that if the . . . hypothetically, if the district court were to find that none of the plaintiffs had either experienced the policy that's alleged nor had a credible threat of having it used against them, then perhaps the whole lawsuit would go away and the injunction would have to go away with it. So from that perspective, too, why wouldn't we have to wait? Or wouldn't it be prudent, let me say, to wait? In this case, what the district court found, and the district court did make a finding on standing and found that the named plaintiffs in the case did have standing to pursue this particular injunction, was that those five individuals and the organizational plaintiffs, almost America, had a threat of being harmed by this policy in the future. And the reason why is that the sheriff's statement that he would be continuing these detentions rendered credible that threat that all of these individuals who travel in vehicles in Maricopa County will be subject to that policy and harmed by the policy. Clarify it for me. I don't understand why the organization has standing to bring this case. I understand the individuals. That's quite clear. The organizational plaintiff in this case asserted standing on two bases, one which the defendants have not disputed, which is that the organization itself has had its mission frustrated by the defendant's policy and has had to divert resources. That's well established under Ninth Circuit law that that's a basis for organizational standing. Why don't you respond to what your adversary talked about here? Suppose there are criminal laws, the basis of which involves people who are in the country illegally, that is, transporting them. And it's a criminal statute that they're trying to enforce even though there will be people who are in the country illegally, which civilly for them is deportation, but criminally for the driver of the car may result in a criminal case. And the concern he indicates is that they need to continue with enforcing those criminal laws, and we can't dispute that. But part of his argument is that Judge Snow, through his record, has interfered with the totality of the circumstance law, which is clear in the Ninth Circuit, that you look at and analyze for a Terry stop. And I understand that argument, too. How is your answer to that argument? Why shouldn't we, if he is correct that there's a threat to criminal enforcement by what this opinion is, that we shouldn't deal with that and not wait? What's your answer to that? Well, the district court injunction certainly did not interfere with any bona fide enforcement of the criminal laws, including the human smuggling law. The injunction basically tracks well-established law, and the defendant's appellants have not come forward with any showing that, in fact, criminal law enforcement has been interfered with. In this case, the reason why unlawful presence cannot by itself constitute reasonable suspicion of human smuggling is this. When you're going to evaluate factors that are not criminal in themselves in the Rodriguez, instructs us that the touchstone inquiry is whether those factors have an adequate degree of suspicion attached to them in comparison to the crime that you're analyzing. In other words, the totality of facts, which is the standard that the district court applied, must be sufficiently probative to the crime as a whole so that it can meaningfully distinguish between those who may be engaging in crime and those who may not. In this case, Judge Snow analyzed the elements of the statute not to impose some kind of rigid test, but in order to conduct that very analysis that's based and grounded in the totality of circumstances test. Well, if, in fact, a police officer who sees a car coming has suspicion for whatever reason, reasonable suspicion for whatever reason, that in the backseat there's a person who's in the country illegally. And he has a reasonable suspicion because of looking at the person in the front seat that this person is engaged in human trafficking. Would he be able to stop that person then and make a Terry stop and proceed with an investigation? If in this hypothetical the officer had specific articulable facts that the driver was engaged in human smuggling or trafficking, as you say, that is a stop that would not be affected by the injunction. The injunction only prohibits an officer from relying solely and totally on the mere unlawful presence of the individual. So if I understand your response is that the argument made by your opposition is not helpful at all because it would not come up in any way that would interfere with this injunction? Not for this particular injunction, no. So to add to Judge Wallace's hypothetical, if the person in the back were holding up a sign that said, help me, you know, suggesting that maybe they were being taken against their will, that would definitely permit a stop. Well, Judge Graber's hypothetical certainly would not be, that stop would not be prohibited by the injunction. Whether that would amount to reasonable suspicion to detain, I personally think it would, but that should be assessed against the totality of the circumstances test again, which is not before this panel. The human smuggling statute, is it being challenged itself on a preemption ground? It is in two separate litigations, Your Honor. But not this one? Not this one. What is the case that was before Judge Bolton where she didn't join the trafficking statute, but not? The United States in its litigation against Arizona's SB 1070 has challenged the entirety of the human smuggling statute. Judge Bolton has not had occasion to rule on a motion for preliminary injunction as to that, but did dismiss a motion to dismiss by the Arizona in that case on this statute. Okay. I want to spend a minute on the Ninth Circuit's case in Easy Riders that defendants have relied on. Well, my case, as I understand it, the helmets were sort of on their face, not compliant. And the only question was whether there had to be further proof of knowledge other than you're wearing an obviously noncompliant helmet. Your Honor is correct. That case did involve a statute that prohibited the wearing of noncompliant motorcycle helmets. It was an unusual case in which that one element that officers did have reasonable suspicion of, which is the noncompliant appearance of the helmet, gave rise to an instance of the only other material element of that offense, which was the specific intent or the knowledge of the motorcyclist that he was wearing. And that's often true. I mean, that really, as Judge Graber was saying, I mean, just about all of these cases, as far as I can tell, are about mens rea. And they all have, I think, a similar dynamic, i.e., the real question is how much can you infer about state of mind from simply the fact that this happened? Right. And in that case, the Ninth Circuit, this Court found that inference to be reasonable only because there was a widespread publicity campaign about noncompliant helmets and with photographs of noncompliant helmets. And therefore, the Court found it was reasonable for officers to take the noncompliant helmet that the officer observed plus the fact of the widespread publicity campaign and infer from those two pieces of information together that there was specific mens rea. The human smuggling statute has a commercial or financial element, right? So simply driving somebody, an illegal person, around isn't a violation. No, it is not. And so if all you have is mere unlawful presence, certainly you cannot, A, infer merely from that fact that the person doing the transporting knows of their immigration status, and, B, cannot infer any commercial purpose or for-profit purpose. Isn't there, I could be wrong, but isn't there a statute that penalizes people for transportation of people illegally in the country? There's a federal statute. There is a federal statute that criminalizes the, there's no federal statute that criminalizes mere unlawful presence. That is exactly what the Supreme Court said. No, but there is. We're not talking about that. We're talking about the person being illegally in the country in the back seat and the person in the front seat transporting them. Correct. I understand. Title 8 U.S. Code 1324 criminalizes the act of transporting somebody if, and this is missing from the Arizona statute, if it is in furtherance of that person's unlawful status. And the federal law does not permit, in contrast to Arizona, some notion of conspiring to transport yourself. So the federal statute differs. The green cars used to get them if they're traveling north, but not if they're traveling south. Oh, wait. Oh, thank you very much. Thank you very much. Thank you. You have some rebuttal time remaining. Yes, I noticed that I ran over last time, so I'll probably. You have about three minutes. Yes, thank you. I'd like to address first Judge Wallace's hypothetical, and I'd like to focus it specifically on the Melendrez stop. The MCSO is not making these traffic stops based on reasonable suspicion. They're only making them on probable cause of a traffic violation, a moving violation, or an equipment code violation. That's not enjoined. That's not enjoined. But I want to point out where the Fourth Amendment is. That's a Fourth Amendment issue there, but that has, at least so far, unless the judge rules differently, that the Louis D. Pietro's traffic stop of the vehicle in which Mr. Melendrez was in appears to be okay, copacetic. What is the problem was the application of the Fourth Amendment, not applying the totality of the circumstances standard, to the detention where Louis D. Pietro said, based on all the information he had and the communications he had with the driver and his observations, he couldn't speak with the passengers because there was a language barrier. He called for a Spanish-speaking 287G certified officer. He himself was 287G certified. And what Judge Snow said is, and I know I sound like a broken record, but if unless you have, and he mentions, he talks about, unless you have reasonable suspicion on the key elements of human smuggling, you do not have reasonable suspicion to conduct that Terry brief investigatory stop. And what's wrong with that? Because you've never ever, this court and the Supreme Court has ever required reasonable suspicion on all the elements of a particular crime to hold a Terry stop. Is there any case that you can point to in which something other than the state of mind was allowed to be missing from reasonable suspicion of all of the elements of the crime? Can you point to a single case where that's been true? Your Honor, I cannot. In fairness, I cannot. In fact, everything that's coming to my mind. Well, it's hard for me to understand how you can have reasonable suspicion that a crime has been committed unless you have reasonable suspicion that each element of the crime is met because otherwise it's not a crime. I mean, it goes back to my bank robbery example. If all I know is that you're leaving the bank with money, I have no reason to suspicion that's reasonable that you stole it. If I see you running out of the bank waving a gun and people screaming, he robbed the bank, then I do. But that's because it supplies the missing elements. Your Honor, I'm not sure if this case deals with the element, but this is a case that was actually cited by Judge Snow, USV McCarty, 648 F3D, 820, specifically 839, where it says, since probable cause is an objective standard, and it's talking about probable cause, relying upon the totality of the circumstances, an officer may have probable cause to arrest or search when he does not have probable cause for every element of the offense. Okay, but what element was actually at stake there? Well, and that's what I'm trying to see here. The missing element concerns the definition of child pornography. So I think we're not dealing with, again, Your Honor, I apologize because I'm representing to you perhaps flippantly. I don't think it was an intent. Let's be specific about this case, okay? Yes, ma'am. In order to have human smuggling, you need to have a commercial or profit element. Yes. So your position, as I understand it, is that if you stop somebody and you know that they're driving in a car with somebody and you have reasonable suspicion to think they're driving in a car with a person who you have reasonable suspicion to think is illegally in the country, that's sufficient. You don't have to have any reasonable suspicion with regard to there being any financial element. No, you don't. It has to be your position, right? It is the position. So in other words, I mean, the key thing here is that it's not just somebody driving their brother-in-law around, but you would say that it's okay to stop somebody who's just driving their brother-in-law around. No. No, absolutely not. Because what you're missing, you're speculating, you're missing, but what I am trying to articulate, not doing a good job, is that when you look at the circumstances in our case, the totality of it, we're dealing with an environment where you have a suspected drop house that's been investigated, a location where you have day labors. Why was it suspected to be a drop house? And there is nothing. It was suspected of being a drop house because they had tips. They investigated it. They found nothing when they investigated it. Because the tip was there are a lot of illegal people around here. The tip, which is an indicator in the community that you have a drop house, which are run by the cartels, which require people to pay off their smuggling debts to the coyotes. Yeah. They then go from the location. The church was never suspected of being the drop house. It was a community apartment complex near there. Because people tend to think of smuggling being simply from point A to point B across the border, when in reality it's a continuum. It had reasonable suspicion in that case, and therefore maybe it wasn't, therefore it wouldn't come under the injunction. But I'm asking, my understanding, and you agreed with me, that your position would be that if you saw somebody driving around in a car with someone who you had reasonable suspicion to think was an illegal alien, that would be a sufficient reasonable suspicion for the human smuggling station. It may be under the totality of the circumstances. It may be. That would be an answer to it. I just gave you all the facts. Under those facts, I would have to say that under the totality, I don't think that cuts it. But if you have the facts like we had under Ortega Melendrez, it does meet the reasonable suspicion. The problem under the injunction? The problem is that he is requiring us to meet every single one of those elements, and he's requiring us when that's never been the standard, Your Honor. Sorry. I think we understand your position. Okay. Thank you, Your Honor. The case just argued is submitted, and before we adjourn, though, I want to remind everyone that we will go back and confer, and then we will return to the courtroom, not in our official capacity, but to meet with the students and any other members of our staff and the public who wish to chat with us. We are adjourned. All rise.
judges: Wallace, Graber, Berzon